IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01080-CYC

STEPHEN S. MCKITRICK,

    Plaintiff,

v.

MARTIN J. O'MALLEY,
COMMISIONER OF SOCIAL SECURITY,

    Defendant.

---

### MEMORANDUM OPINION AND ORDER

---

**Cyrus Y. Chung, United States Magistrate Judge.**

    Plaintiff Stephen S. McKitrick appeals an adverse decision of the Social Security Commissioner (the "Commissioner") made through an administrative law judge ("ALJ") that found that he was not disabled. The ALJ, he says, failed to consider sufficiently a closed period of disability entitling him to benefits. But the ALJ's finding that the plaintiff was not disabled for the entire period, supported by substantial evidence, implied also that the plaintiff was also not disabled for a closed period therein. For the reasons that follow, then, the ALJ's decision must be affirmed.

### BACKGROUND

    The plaintiff applied for Social Security disability benefits with the Social Security Administration (the "SSA") on January 19, 2022, asserting that he became disabled starting from his June 15, 2021 hip replacement surgery through the date of the application. ECF No. 7-5 at 2-4. On July 22, 2022, an SSA disability examiner denied the plaintiff's application, finding that the plaintiff was not disabled from June 15, 2021, through that date. ECF No. 7-3 at 2-10. Some

1

two months later, the plaintiff requested reconsideration, contending that his chronic daily pain, hip replacement, lumbar fusion, and arthritis were at odds with the examiner's determination. ECF No. 7-4 at 17. A different SSA disability examiner denied reconsideration several months later, affirming the first examiner's findings. ECF No. 7-3 at 10-20. A claimant "dissatisfied with one of the determinations or decisions" he receives from the SSA "may request a hearing" with "an administrative law judge," 20 C.F.R. § 404.929, and the plaintiff did so on April 3, 2023. ECF No. 7-4 at 26-27. Some seven months later, the plaintiff received his hearing, *see* ECF No. 7-2 at 38-67, and, on January 12, 2024, the ALJ found that the plaintiff was not disabled under the Social Security Act at any time between June 15, 2021, and the date of that hearing. ECF No. 7-2 at 11-24.

In doing so, the ALJ followed the SSA's familiar "five-step sequential evaluation process [it] use[s] to decide whether you are disabled." 20 C.F.R. § 404.1520(a)(1). In that framework, the claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). The Commissioner bears the burden of proof at any necessary fifth step. *Id*. at 751.

The first step involves consideration of the applicant's "work activity"; if the applicant is "doing substantial gainful activity" the SSA will find that he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that the plaintiff was not doing substantial gainful activity. ECF No. 7-2 at 13.

Next, the ALJ "consider[ed] the medical severity of" the plaintiff's "impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). Without a severe impairment lasting at least twelve months, the SSA will find that an applicant is not disabled. *Id.* Here, the ALJ found that the plaintiff had the

2

severe impairments of lumbar spinal stenosis, disorders of the skeletal spine, osteo arthritis, soft tissue injury of the lower extremity, and complex regional pain syndrome. ECF No. 7-2 at 13-14. The ALJ classified other impairments of the plaintiff's, including a thyroid disorder, hyperlipidemia, and post-traumatic stress disorder, as not severe. *Id.* at 14-15.

"At the third step," the ALJ "also consider[ed] the medical severity of" the plaintiff's "impairment(s)" to see whether they met or equaled the severity of certain specified impairments that would result in a finding that the plaintiff was disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ found that the plaintiff's impairments did not meet such criteria. ECF No. 7-2 at 15-16.

The ALJ's analysis ended at the "fourth step," involving an "assessment of" the plaintiff's "residual functional capacity" ("RFC") — that is, "the most [he] can still do despite [his] limitations," 20 C.F.R. § 404.1545(a)(1) — and his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). A conclusion that an applicant "can still do" his "past relevant work" results in a finding that he is "not disabled." *Id.* The ALJ found that the plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except [he] must never be required to climb ladders, ropes, or scaffolds. He is able to occasionally climb ramps and stairs. He is able to frequently balance with a handheld assistive device (a cane) that is required for uneven terrain or prolonged ambulation. He is able to occasionally stoop, crouch, kneel, and crawl. He is able to occasionally reach overhead, bilaterally. He is able to frequently handle and finger, bilaterally and is able to occasionally feel, bilaterally. He is able to tolerate occasional exposure to excessive vibration and is able to occasionally walk on uneven surfaces.

ECF No. 7-2 at 16. Having so found, the ALJ determined that the plaintiff could perform his past relevant work of being an assignment clerk or volunteer coordinator and was therefore not disabled, rendering analysis of the fifth step unnecessary. *Id.* at 23-24.

A week later, the plaintiff appealed to the SSA's Appeals Council. ECF No. 7-4 at 105-06. The Appeals Council denied the request for review on February 28, 2024. ECF No. 7-2 at 2-4. This timely request for judicial review pursuant to 42 U.S.C. § 405(g) followed, and the

3

parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). ECF No. 8.

## ANALYSIS

Title II of "[t]he Social Security Act," 42 U.S.C. § 401 *et seq.*, "authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). A benefits claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. *Id.* §§ 423(d)(3), 423(d)(5)(A). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citation omitted). "However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Alcantar v. Colvin*, 207 F. Supp. 3d 1206, 1209 (D. Colo. 2016) (citing *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)).

The primary responsibility for determining eligibility for disability benefits lies with the Commissioner. *See* 42 U.S.C. § 405(a). But an individual may obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . by a civil action commenced within sixty days after the mailing to him of notice of

such decision." 42 U.S.C. § 405(g). The scope of such review is limited, as "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id.* Thus, a reviewing court simply determines "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). A reviewing court therefore may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec. of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991) (citations omitted). Under that deferential standard, the plaintiff's challenge falls short.

The ALJ's decision, after all, had substantial evidence to support it. Following the plaintiff's recovery from June 15, 2021 hip replacement surgery, for example, his August 3, 2021 medical records showed that "his hip is doing fantastic," that he had an "excellent range of motion," and that he had "5 out of 5 strength to dorsiflexion and plantar flexion, extensor hallucis longus (EHL), and gastrocnemius complex." ECF No. 7-7 at 282-283. The records also showed that although the plaintiff had neuropathic pain in his left foot, Lyrica helped with that pain and his treating physician managed it with a recommendation for an increased dose. *Id.*; *see* ECF No. 7-2 at 18. In September 2021, the plaintiff's records showed weakness in left-side hip flexion and quadriceps strength but also indicated that Lyrica and hydrocodone continued to help with some of the pain and tingling in his left leg. ECF No. 7-7 at 6; ECF No. 7-2 at 17-18.

Doctors designed a therapeutic plan for the plaintiff, but for three months thereafter, due to insurance delays and a physical therapy clinic's closure, the plaintiff was unable to follow the plan. ECF No. 7-7 at 18-19. Nevertheless, during that time, Lyrica continued to help, and the plaintiff's symptoms would diminish after he had been awake for a few hours. *Id.* at 46. Apart from the earlier-devised therapeutic plan, a doctor also performed bilateral hip flexor injections on January 4, 2022, *id.* at 20-21, resulting in a report a week later that they were "substantially beneficial," largely relieving the plaintiff's right-side pain, though pain persisted on the left side. *Id.* at 53. The records reflect that the plaintiff required no assistance to sit, stand, or transition on and off the examination table. *Id.* at 54. Also, on that day, a doctor performed trigger point injections to alleviate the remaining pain, *id.* at 54-55, which were "helpful for decreasing the tension throughout the" painful "region," though it did leave a "sensation of a 'nerve being pulled' over the back of the calf." *Id.* at 56; *see* ECF No. 7-2 at 19. In the meantime, Lyrica and hydrocodone continued to provide a "good benefit." ECF No. 7-7 at 56.

By April 2022, the plaintiff reported that his "back and hip pain" were "worsening," ECF No. 7-10 at 151. But his medical records also indicate that he was "able to ambulate without difficulty or assistance, pain, limp or antalgic gait." *Id.* at 151; *see* ECF No. 7-2 at 19-20. He was "able to get up from a sitting position without assistance," though "with pain." ECF No. 7-10 at 152. And while Lyrica had "good results" for him, he wanted to explore non-pharmaceutical options because of medicinal side effects. *Id.* at 151. That ultimately, was the path he pursued, receiving a spinal cord stimulator trial in October 2022, ECF No. 7-7 at 557-558, that led to a 90% reduction in pain by December 2022, *id.* at 776, and a 95% reduction by May 2023. ECF No. 7-9 at 876; ECF No. 7-2 at 20. Upon that record, the ALJ had substantial evidence to find, as he did, that while the plaintiff "had bilateral upper extremity paresthesias," — "[a] spontaneous

6

abnormal usually nonpainful sensation (e.g., burning, pricking)," Paresthesia, Stedmans Medical Dictionary 653800 (2014) — "as well as continued low back and lower extremity pain and paresthesias," he also had "the residual functional capacity for a reduced range of sedentary work." ECF No. 7-2 at 21. Repeated references in the records to the plaintiff's ability to ambulate and to his range of motion support the ALJ's findings that, among other things, the plaintiff could "frequently balance with a handheld assistive device," that he could "stoop, crouch, kneel, and crawl occasionally," and that he was "able to occasionally walk on uneven surfaces." *Id.* No more was necessary.

The plaintiff makes no facial attack on the ALJ's overall conclusion. Instead, he contends here for the first time that the ALJ should have awarded him a closed period of disability, that is, a "period of disability with a definite beginning date and a definite ending date that the adjudicator establishes at the time of adjudication." Programs Operations Manual System (POMS) DI 25510.001(A). "To establish a closed period of disability, the evidence must show: the onset date . . . , the duration requirement is met . . . , and the date disability ceased." *Id.* (B)(1). On his view, the ALJ should have segregated the span of June 15, 2021, the date of the plaintiff's hip replacement surgery, to October 2022, the date of the spinal cord stimulator implantation, as such a closed period.

As a threshold matter, the Commissioner contends that the plaintiff waived this argument by failing to raise it with the ALJ. ECF No. 11 at 9-10. "[T]here is precedent indicating that, when a claimant fails to raise the issue of a closed period of disability to the ALJ hearing his case, that claimant may not raise that issue on appeal to the district court." *Hazlett v. O'Malley*, Case No. 3:22-cv-34, 2024 WL 4350116, at *4 n.3 (W.D. Pa. Sept. 30, 2024); *see Goldstein v. Colvin*, Civ. No. 13-11361-RWZ, 2015 WL 12781191, at *3 (D. Mass. Mar. 30, 2015) (holding

7

that "[b]ecause" the "possibility" of a closed period "was not raised for the ALJ to consider, it is deemed waived" (citing *Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001))). And courts have held "that, at least when claimants are represented by counsel," as the plaintiff was here, "they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). The plaintiff argues that *Carr v. Saul*, 593 U.S. 83 (2021), mandates a different result. *See* ECF No. 9 at 5-6. It does not. While *Carr* held that claimants did not "forfeit[] their Appointments Clause challenges by failing to make them first to their respective ALJs," 593 U.S. at 85, it signaled that "[o]utside the context of Appointments Clause challenges, such as in the sphere of routine objections to individual benefits determinations, the scales might tip differently." *Id.* at 92 n.5. Nevertheless, given that "courts that have confronted this issue have not reached a consensus about the First Circuit's position that an issue is waived when a claimant fails to present it to an ALJ," *Logan v. Barnhart*, 72 F. App'x 488, 491 (7th Cir. 2003) (unpublished), the Court need not resolve it here.

That is so because courts have regularly held that "[w]here the ALJ concludes that a plaintiff does not meet disability requirements during any period relevant to his claim, the ALJ cannot assess a closed period of disability benefits." *Chance M.S. v. O'Malley*, 23-cv-02087-TC, 2024 WL 2051835, at *8 (D. Kan. May 8, 2024); *see Hays v. Kijakazi*, No. CIV-21-448-AMG, 2022 WL 3582507, at *4 (W.D. Okla. Aug. 19, 2022) (collecting cases); *Gragert v. Colvin*, No. 12-cv-02641-CMA, 2014 WL 1214028, at *4 (D. Colo. Mar. 24, 2014). So it is here: the ALJ found that the plaintiff had not been under a disability for purposes of the Social Security Act from June 15, 2021, through January 12, 2024, encompassing the June 2021 to October 2022 period the plaintiff targets. ECF No. 7-2 at 24. Thus, the ALJ's "conclusion that Plaintiff was not disabled during that time period indicates that [he] was not entitled to [a] closed period of

8

disability during any period of time therein." *Powell v. Kijakazi*, Civ. No. 21-443 JFR, 2022 WL 2904393, at *12 (D.N.M. July 22, 2022).

The plaintiff protests. The ALJ, he says, found significant improvement following implantation of the spinal cord stimulator in the plaintiff and, even with that improvement, assigned the plaintiff to the RFC of being able to perform limited sedentary work, the lowest RFC category. On his view, it is therefore inescapable that he fell below that category during his proposed closed period.

The argument has some superficial appeal. Courts have remanded cases to the Commissioner to consider a closed period of disability where an ALJ has had "heavy reliance on evidence showing that Plaintiff's condition had improved" to find that the plaintiff was not disabled. *Michael S. v. Comm'r of Soc. Sec. Admin.*, Case No. 3:21-cv-00336, 2023 WL 2642940, at *4 (S.D. Ohio Mar. 27, 2023); *see Fountain v. Berryhill*, No. 5:16-cv-507-MTT-CHW, 2018 WL 912620, at *4 (M.D. Ga. Jan. 12, 2018) (criticizing ALJ's "great emphasis" placed "on Plaintiff's post-surgical improvement")*, report and recommendation adopted*, 2018 WL 907415 (M.D. Ga. Feb. 15, 2018). But it cannot bear the weight the plaintiff puts on it.

For one thing, the ALJ did not rely exclusively — or even primarily — upon the plaintiff's improvement to find that he was not disabled. Unlike the "one sentence" summary of pre-improvement evidence in *Michael S.*, 2023 WL 2642940, at *3, for instance, the ALJ here conducted a detailed survey of the plaintiff's pre-spinal cord stimulator medical history. *See* ECF No. 7-2 at 18-20. And in contrast to the ALJ's ignoring of a pre-surgery consultative report in *Fountain*, 2018 WL 912620, at *4, the ALJ here explicitly considered the consultative opinion of Dr. Holtgrewe, undertaken prior to the implantation of the spinal cord simulator, which opined that the plaintiff could perform sedentary work. ECF No. 7-2 at 21. Moreover, the ALJ did not

9

uncritically accept Dr. Holtgrewe's findings. Instead, he added restrictions relating to reaching, manipulation, exposure to excessive vibration, and walking on uneven surfaces based on the paresthesias he observed in the plaintiff's medical records. *Id.*

For another, the plaintiff's logic assumes too much, as he "seems to (erroneously) assume that just because [his] condition improved after" his spinal cord stimulator, "it must have been at a level severe enough to qualify for disability before that date." *Gragert*, 2014 WL 1214028, at *3. That need not be so. Many of the ALJ's restrictions in the RFC, for example, reflect symptoms that the plaintiff testified were unchanged following implantation of the spinal cord stimulator, including foot drop in the plaintiff's left leg, the use of a cane, and residual left-side paresthesia. *See* ECF No. 7-2 at 51-52. Indeed, though the spinal cord stimulator was more helpful for pain, it only reduced the plaintiff's numbness, tingling, and muscle weakness by 20%. ECF No. 7-9 at 876. Those were some of the most salient characteristics limiting the plaintiff's functionality, and the improvement shown there is far from compelling evidence that the stimulator alone rendered him not disabled.

The plaintiff has another shot in his sling. Even if the ALJ's finding of improvement does not necessarily imply that the plaintiff was previously disabled, the ALJ's lack of explicit analysis regarding the proposed closed period makes the Court's review guesswork. ECF No. 12 at 1-2. To be sure, "the ALJ's reasons for the decision" must be "articulated with sufficient particularity to allow for judicial review." *Gorian v. Colvin*, 180 F. Supp. 3d 863, 868 (D.N.M. 2016). But "the ALJ cannot be faulted for failing to consider something" explicitly "that plaintiff did not ask [him] to consider." *Jason M. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0091, 2021 WL 1022441, at *4 (W.D.N.Y. Mar. 17, 2021) (internal quotation marks and citation omitted) (modification in original). The ALJ issued findings that dealt generally with the task before him:

whether the plaintiff was disabled during the entire period under consideration. No more was exigible. The cases the plaintiff cites, *see* ECF No. 9 at 6 n.4, are not to the contrary. *Harris v. Sec'y of Health and Human Servs.*, No. 82-1868, 1984 U.S. App. LEXIS 14334, at *9 (6th Cir. 1984) (unpublished) (per curiam), for instance, based its remand not simply on a lack of specific findings regarding a closed period of disability but instead emphasized that the ALJ had failed to consider a conflict between the plaintiff's testimony and her report to the SSA. And *Joyce v. O'Malley*, No. 5:22-CV-490-FL, 2024 WL 666662, at *7 (E.D.N.C. Jan. 24, 2024), *report and recommendation adopted*, 2024 WL 666331 (E.D.N.C. Feb. 16, 2024), cited the ALJ's insufficient consideration of medical opinions in remanding to the Commissioner. Neither case compels remand for a lack of explicit findings regarding a closed period alone.

Finally, the plaintiff highlights a number of difficulties he had during his proposed closed period of disability. ECF No. 9 at 8-15. But the function of this Court in reviewing the administrative record is not to reweigh the evidence, *Casias*, 933 F.2d at 800, and, thus, while there is significant evidence of limitation within the portions of the record the plaintiff identifies, none of it renders the evidence upon which the ALJ relied insubstantial.

The short of it is that the ALJ had substantial evidence to support his conclusion that the plaintiff was not disabled for the entire period from June 15, 2021, until the hearing date. That conclusion encompassed the closed period the plaintiff contests here, and the ALJ's treatment of the plaintiff's improvement does not mandate a conclusion that the plaintiff was previously disabled.

## **CONCLUSION**

For the foregoing reasons, the decision of the Commissioner, ECF No. 7, is **AFFIRMED**.

SO ORDERED this 27th day of January, 2025, at Denver, Colorado.

BY THE COURT:

_____
Cyrus Y. Chung
United States Magistrate Judge